IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CR 111-359 |
| | * | |
| JAMIE CEJA | * | |

O R D E R

On July 11, 2012, Defendant Jamie Ceja was convicted by a jury of (1) conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and an amount of marihuana and (2) possession with intent to distribute 5 kilograms or more of cocaine.  At sentencing, Defendant was determined to be a career offender under the United States Sentencing Guidelines, yielding a total offense level of 37 and a criminal history category of VI.  His guideline range was calculated to be 360 months to life; however, the undersigned judge varied downward and sentenced Defendant to 327 months.

At the time the Presentence Investigation Report was issued, December 3, 2012, Defendant was reported to be in good health.  On June 17, 2022, Defendant filed a motion for compassionate release, only contending that as a former smoker, his health would be compromised by COVID-19.  (Doc. 157.)  The Government, however, submitted Defendant's medical records, which showed the following

fairly common maladies: high cholesterol, high blood pressure, gastro-esophageal reflux disease, hypothyroidism, prediabetes, and depression and anxiety.[1] The Court denied compassionate release because these conditions were neither extraordinary nor compelling in that they did not substantially diminish Defendant's ability to provide self-care within the correctional facility. (See Order of Sept. 12, 2022, Doc. 162, at 3-4 (citing U.S.S.G. § 1B1.13, n.1(A)(ii) (2022)).) The Court also determined that the relevant sentencing factors of 18 U.S.C. § 3553(a) militate against early release. (See id. at 4.)

On June 26, 2023, Defendant filed a second motion for compassionate release asserting that his guideline calculation would not be the same if sentenced today. He also mentioned that he needed to care for his elderly father. Notably, Defendant did not mention his medical health or any alleged denial of medical care. (See Doc. 166.) The Court denied this motion on August 16, 2023, reiterating that the § 3553(a) factors weigh against early release of Defendant. (Doc. 168.)

Following the issuance of this last Order, Defendant was diagnosed with renal cell carcinoma, and his right kidney was removed in December 2023. On August 9, 2024, nine months after

---

[1] In looking back at the medical records submitted by the Government in response to Defendant's motion, there is mention of a diagnosis for chronic kidney disease, stage 2 (mild) in July 2020. (See Doc. 158, Ex. A, at 31-32.)

2

the surgery, Defendant filed the instant motion for compassionate release. Defendant has also filed a motion for sentence reduction based upon Amendment 821 to the United States Sentencing Guidelines.

For the reasons that follow, both of Defendant's motions seeking sentence modification (docs. 169 & 170) are **DENIED**.

I.  Motion for Compassionate Release

In order to grant a motion for compassionate release, the Court must find the following conditions are met: (1) extraordinary and compelling circumstances exist; (2) adherence to Policy Statement of the United States Sentencing Commission, U.S.S.G. § 1B1.13 (including a finding that the defendant is not a danger to the community); and (3) support in the sentencing factors of 18 U.S.C. § 3553(a). United States v. Tinker, 14 F.4th 1234, 1237-38 (11th Cir. 2021). Absence of even one of these requirements would foreclose a sentence reduction. Id.; United States v. Giron, 15 F.4th 1343, 1348 (11th Cir. Oct. 13, 2021) ("[C]ompassionate release is permissible only if all three findings are made.").

Since Defendant's last motion for compassionate release, the Policy Statement has been amended. The Policy Statement, as amended on November 1, 2023, now contains a list of examples of "extraordinary and compelling" reasons to include circumstances related to a defendant's health, age, family circumstances, and

3

abuse while in custody. U.S.S.G. § 1B1.13(b)(1)-(4). There is also a catch-all provision, § 1B1.13(b)(5), which vests the district court with discretion to determine if "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." Finally, the Policy Statement provides that defendants who are serving unusually long sentences may be eligible for compassionate release under § 1B.13(b)(6). Through his motion, Defendant seeks compassionate release citing medical reasons and an alleged sentence disparity.

"Medical circumstances" that may provide relief include (1) a terminal illness; (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or (3) a medical condition that "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." See U.S.S.G. § 1B1.13(b)(1)(A-C).

In support of his motion, Defendant submitted select pages of his medical history; the Government submitted a more comprehensive set of Defendant's inmate medical record. (See Gov't Resp. in

4

Opp'n, Doc. 174-2, Ex. A.)  It is undisputed that Defendant was diagnosed with "clear cell renal cell carcinoma" in December 2023, a result of which he had his right kidney removed.  (Id. at 1-2.) Through his present motion, he takes issue with the medical care he received in the last several years, alleging that his kidney condition was known to the BOP as early as 2015 and was not properly treated.  He claims to have been regularly urinating blood since 2020, which went untreated.  He claims that he was thus subjected to unnecessary pain and suffering for the past several years.[2] Even accepting these claims as true, Defendant has not established extraordinary and compelling circumstances warranting relief. Instead, his claims ring more of a constitutional claim for deliberate indifference to a serious medical need, which is not cognizable under 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement's medical circumstances provision is exacting.  Applying its terms to Defendant's situation, he has not argued let alone established under U.S.S.G. § 1B1.13(b)(1)(A)&(B) that he is terminal or that he is unable to provide self-care at his institutional facility as a result of his kidney condition. In fact, he concedes that he requires neither durable medical equipment nor assistance with self-care in his motion for compassionate release.  (Doc. 170, at 23.)  Moreover, Defendant is

---

[2]  Yet, Defendant did not mention these circumstances in his previous two motions for compassionate release.

5

not under any restriction or limitation as to work, housing, or physical activity. (See generally Doc. 174-2, Ex. A.)

Defendant has also not established that his medical condition "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," U.S.S.G. § 1B1.13(b)(1)(C). The pathology report following kidney surgery states: "Clear cell renal cell carcinoma, all margins negative for invasive carcinoma." (Doc. 174-2, Ex. A at 1.) There is no indication from the records that Defendant requires follow-up care such as radiation or chemotherapy. Rather, it appears that the BOP is monitoring his condition with regular visits to the clinic, laboratory testing and imaging, and prescription medication. (See id. at 1-56.) In the medical note of Defendant's last clinical visit in July 2024,[3] Defendant reported no pain and was following-up in the clinic because "he knows he should have follow up studies." (Id. at 1.) The medical records do not demonstrate that Defendant requires specialized care and is at risk of serious deterioration in health or death.

Ultimately, Defendant has the burden to establish an extraordinary and compelling reason to warrant compassionate release. See United States v. Granda, 852 F. App'x 442, 446 (11th

---

[3] The Government obtained the medical records in August 2024.

6

Cir. 2021). He has not done so. Rather, it appears Defendant's kidney condition is stable and monitored by the BOP. His medical care has been ongoing and consistent without serious incident.

Defendant's other stated reasons do not justify early release. The circumstances pertaining to inadequate nutrition, lockdowns, and non-access to outside recreation or laundry are conditions-of-confinement claims, which do not present the individualized circumstances necessary to warrant compassionate release. Rather, these claims are cognizable, if at all, only under 42 U.S.C. § 1983.

To the extent Defendant is invoking the "Unusually Long Sentence" provision of U.S.S.G. § 1B1.13(b)(6), it is inapplicable because Defendant has not identified any "change in the law" that would make his sentence if imposed today grossly disparate from the sentence he received. In fact, as explained below, Defendant's guideline range remains 360 months to life, and he was sentenced below this guideline range. Thus, Defendant's sentence is not extraordinary and compelling.

Finally, the amended Policy Statement did not change the applicability of the § 3553(a) sentencing factors to pleas for compassionate release. As the Court has stated twice before, the § 3553(a) factors do not weigh in favor of Defendant's release.

Upon the foregoing, Defendant Ceja's motion for compassionate release (doc. 170) is hereby **DENIED**.

7

II.  Amendment 821

In his motion for a sentence reduction pursuant to Amendment 821 to the Sentencing Guidelines, Defendant claims he has a claim under Part A.  Part A provides a retroactive adjustment for certain offenders whose criminal history was impacted by "status points" under U.S.S.G. § 4A1.1.  Under the prior version of U.S.S.G. § 4A1.1, Defendant's criminal history score of 12 was increased by two "status" points because he was under a criminal justice sentence in state court when he committed his federal offense.  Under the amended U.S.S.G. § 4A1.1(e), Defendant would receive only one status point.  This is irrelevant, however, because Defendant's criminal history category was determined to be VI based upon his career offender status, not his criminal history score.[4]  That is, Defendant's guideline range is unaffected by Amendment 821.  For this reason, Defendant Ceja's motion to reduce sentence upon application of Amendment 821 (doc. 169) is **DENIED.**

**ORDER ENTERED** at Augusta, Georgia, this ___19th___ day of December, 2024.

> _____
> HONORABLE J. RANDAL HALL
> UNITED STATES DISTRICT JUDGE
> SOUTHERN DISTRICT OF GEORGIA

---

[4]   Additionally, whether Defendant's criminal history score was 13 or 14, his classification would be category VI.

8